UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARVIN PACE,

        Plaintiff,

v.                                        Case No. 3:23-cv-752-BJD-LLL

RICKY DIXON, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, Marvin Pace, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action *pro se* by filing a motion for injunction or temporary restraining order (Doc. 1; Pl. Mot.). Plaintiff has not filed a civil rights complaint. In his motion, Plaintiff alleges he is a wheelchair-bound paraplegic with multiple sclerosis who has been denied the use of his wheelchair and concomitant ability to care for himself or participate in out-of-cell activities. *See* Pl. Mot. at 1, 3-4. He seeks an order directing the FDOC and its contract medical provider, Centurion, to "'prohibit and[/]or stop' the Department from denying [him] the use of . . . [his] wheelchair." *Id.* at 1 (internal punctuation omitted).

Plaintiff provides multiple exhibits in support of his motion (Docs. 1-2 through 1-24), some of which are medical records documenting a history of multiple sclerosis and paraplegia. *See* Doc. 1-2 at 1; Doc. 1-3 at 1-2; Doc. 1-4 at 2; Doc. 1-16 at 4; Doc. 1-20 at 5. Plaintiff entered the FDOC in 2018 with his own wheelchair, but his wheelchair pass was revoked in March 2022 because he was using pieces of the wheelchair to make weapons and a medical provider noted Plaintiff had "normal strength and range of motion in [his] lower extremities." *See* Pl. Mot. at 4-5; Doc. 1-9 at 1, 6-7, 24.

Plaintiff has filed multiple grievances and sick-call requests seeking reinstatement of his wheelchair pass. *See, e.g.*, Docs. 1-7 through 1-9. According to grievance responses, Plaintiff was considered a "Heightened Security" risk in March and April 2022. Doc. 1-18 at 1; Doc. 1-19 at 1. He did not have a medical pass for a wheelchair at that time, but the colonel "issued a memo that a wheelchair [was to] be used for out-of-cell escorts." Doc. 1-18 at 1; Doc. 1-19 at 1. *See also* Doc. 1-9 at 11 (grievance response noting "[a]lternative accommodations for mobility" were to be provided for out-of-cell movement).

On May 4, 2022, a physical therapist treating Plaintiff's hand injury recommended "restoration of [Plaintiff's wheelchair] privileges, *if appropriate*, to allow for improved functional mobility, toileting and feeding, hygiene and

2

locomotion." Doc. 1-20 at 8 (emphasis added). On January 4, 2023, a neurology nurse evaluated Plaintiff and noted that a "[w]heelchair pass needs to be written" for him and he should be transferred to "a higher level of care such as infirmary or hospital care at RMC" because he is unable to have a wheelchair assigned to him at Suwannee Correctional Institution. *Id.* at 1. At least one doctor believes Plaintiff to be malingering, *see* Doc. 1-16 at 4, and his recent assessments show he "[has] not been approved for a wheelchair," *see* Doc. 1-9 at 32, 44.

Plaintiff acknowledges in a grievance dated April 10, 2023, that the FDOC approved his use of a wheelchair for out-of-cell escorts and call-outs, but he says security officers and a mental health counselor sometimes order him to stand/walk and, if he does not, falsely report that he refused his call-out or appointment. *See* Doc. 1-9 at 32, 40. *See also* Pl. Mot. at 5. He also asserts corrections officers have used force against him for his refusal or inability to stand/walk, including spraying him with chemical agents, which places him in "peril" because he is "a chronic respiratory patient." *See* Pl. Mot. at 5-6, 11, 14-15.

3

Injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction,[1] "is an 'extraordinary and drastic remedy,' and [the movant] bears the 'burden of persuasion.'" *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). To demonstrate entitlement to injunctive relief, a movant must show the following four prerequisites:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

Plaintiff has not filed a complaint setting forth the claims he wants to pursue against the named Defendants—the Secretary of the FDOC, Ricky Dixon, and Centurion. However, liberally construing Plaintiff's allegations and considering his exhibits, it appears he alleges violations of the Eighth Amendment and the Americans with Disabilities Act (ADA). Accepting

---

[1] The primary distinction between a temporary restraining order and a preliminary injunction is that the former is issued *ex parte*, while the latter requires "notice to the adverse party." Fed. R. Civ. P. 65(a), (b). *See also* M.D. Fla. R. 6.01, 6.02 (describing the requirements for the issuance of temporary restraining orders and preliminary injunctions).

Plaintiff's allegations as true, he fails to establish a likelihood of success on the merits of these claims, which alone is fatal to his request for injunctive relief.

A claim for deliberate indifference to a serious illness or injury is cognizable under 42 U.S.C. § 1983 as an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, a prisoner bringing such a claim "has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). In the prison context, a medical provider is deemed to have been deliberately indifferent, for example, when he or she knows an inmate needs medical care but intentionally refuses to provide that care, *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985), or delays necessary medical care for non-medical reasons, *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). A prisoner-plaintiff who receives medical treatment and merely disputes the adequacy of that treatment generally fails to state a plausible Eighth Amendment claim. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). In other words, a prisoner must do more than allege the care he received was "subpar or different from what he want[ed]." *Keohane*, 952 F.3d at 1277.

Even if a prisoner-plaintiff plausibly alleges a medical provider or corrections officer was deliberately indifferent to his serious medical needs, he must allege more to state a cognizable claim against a supervisor or employer

5

because liability under § 1983 may not be premised on a theory of vicarious liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). A claim against a supervisor may proceed only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A causal connection can be established when a supervisor knows a subordinate will act unlawfully or adopts a policy that results in deliberate indifference to an inmate's constitutional rights. *Id. See also Ancata*, 769 F.2d at 704-06 (describing the ways in which a prisoner can allege a prison official, including a supervisor, acted with deliberate indifference to his serious medical needs).

Under the ADA, public entities are prohibited from discriminating against an individual due to a disability. *See* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). "[A] disabled prisoner can state a Title II–ADA claim if he is denied participation

6

in an activity provided in [a] state prison by reason of his disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007).

Plaintiff does not allege, nor do the medical and grievance records show, that he has been denied medical care. On the contrary, the records show he has treated with numerous providers, including physical therapists and specialists, most recently undergoing a spinal tap at an outside hospital. *See* Pl. Mot. at 12; Doc. 1-9 at 13; Doc. 1-16. Nor do the records show Plaintiff's mobility limitations have not been accommodated in light of the security risk he poses when housed in a cell with a wheelchair. Although Plaintiff's wheelchair pass was revoked and not reinstated despite some medical recommendations that it should be, there appears to be a genuine disagreement whether Plaintiff needs a wheelchair full-time or whether he can safely have a wheelchair inside his cell, and prison officials have arranged for him to have wheelchair access for out-of-cell movement.[2] To the extent individual corrections employees have, at times, denied Plaintiff mental health services or out-of-cell time because of his inability or refusal to walk, Plaintiff alleges no facts showing Secretary Dixon or Centurion is responsible.

---

[2] From a corrections standpoint, Plaintiff's circumstances appear unique and challenging in that there is evidence showing he needs routine and somewhat intensive medical care but, at the same time, presents a security risk, especially when he has unlimited access to a device with metal parts.

Not only is Plaintiff's motion insufficient to warrant injunctive relief, to the extent he is attempting to raise claims regarding his conditions of confinement, he has not filed a civil rights complaint form naming the individuals allegedly responsible for any violations. The Court has approved the use of a civil rights complaint form for cases filed by prisoners pursuant to 42 U.S.C. § 1983. The form requires a plaintiff to include detailed information regarding the defendants he intends to sue, the plaintiff's litigation history, a statement of the plaintiff's claims and facts, and the relief the plaintiff requests. If Plaintiff chooses to file a civil rights complaint against individuals who allegedly have subjected him to unconstitutional conditions of confinement, he may do so using the proper form, a copy of which the Clerk will send to him. *See* M.D. Fla. R. 6.04(a) ("A pro se person in custody must use the standard form[.]").

For the foregoing reasons, this case will be dismissed without prejudice subject to Plaintiff's right to initiate a civil rights action to address any allegedly unconstitutional conditions of his confinement, if he elects to file one.

Accordingly, it is

**ORDERED:**

1. Plaintiff's motion for injunctive relief (Doc. 1) is **DENIED**.

2. This case is hereby **DISMISSED without prejudice**.

3. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

4. The **Clerk** shall send Plaintiff a civil rights complaint (prison filings) form.

5. The **Clerk** shall send a copy of this Order and Plaintiff's motion (Doc. 1) to the Warden of Suwannee Correctional Institution-Annex and the Office of the Inspector General for any investigation or action that may be warranted based on Plaintiff's allegations.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July 2023.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c: Marvin Pace